UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL PERACH,

        Plaintiff,

v.

                                        Case No. 08-13754

CRAIG LEE,                            Honorable Julian Abele Cook, Jr.

        Defendant.

## ORDER

In this case, the Plaintiff, Daniel Perach, claims in this lawsuit that the Defendant, Craig Lee, while acting as a law enforcement officer in Ann Arbor, Michigan, unlawfully deprived him of his constitutional right to be free from excessive use of force to which he is entitled under the Fourth Amendment of the United States Constitution.

On June 19, 2009, Lee filed a motion for summary judgment pursuant to Fed. R. Civ.P.56(c),[1] contending that Perach, who had initiated this lawsuit pursuant to 42 U.S.C. § 1983,[2]

---

[1] Fed. R. Civ. P. 56(c) states that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

[2] 42 U.S.C. § 1983 states, in pertinent part, that: "(e)very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

had failed to set forth any genuine issues of a material fact relating to the issue of qualified immunity. Lee's motion, which has been opposed by Perach, is now before the Court for its resolution.

I.

During the evening hours of September 1, 2005, Perach - a senior in the undergraduate program at the University of Michigan - was observed by two Ann Arbor police officers while he was walking on Greenwood Street with a red plastic cup in his hand. These officers, both of whom had suspicions as to whether Perach's cup contained an alcoholic beverage, persuaded him to voluntarily turn it over to them. Once the container was in their possession, the officers smelled its contents, and thereafter concluded that Perach had consumed an alcoholic beverage on a public street. Perach, who did not challenge their conclusion, was asked by the officers to produce some form of identification because they intended to issue him a citation for possessing an open intoxicant in public - a misdemeanor offense under the Ann Arbor City Code. Although Perach retrieved a wallet from the back pocket of his pants, he did not remove the identification. Rather, turned around and ran westbound on Greenwood Street in a direction that was away from the two police officers.

Later that evening, the police officers returned to the Greenwood Street area where they noticed that Perach had also returned. When they asked Perach to approach them, he fled once again - this time toward Vaughn Street, one block south of Greenwood Street. A radio message with Perach's physical description was transmitted to other law enforcement officers in the vicinity. Craig Lee and his partner, who had heard the radio transmission, saw Perach running in their direction. Perach, who was directed by these both officers to stop, ignored their directive and

continued running. A chase ensued.

While Perach was running through several backyards in the general vicinity of Greenwood and Vaughn Streets , he tripped over a fence. Lee asserts that he made an attempt to hold Perach, but was unable to do so because he also tripped over the fence and fell on the ground. According to Lee, he "had his hands on [Perach]'s body [after these two parties had fallen to the ground] and ordered him to stay down, however [Perach] pulled free, got up, and continued to run away from [him]." Lee also asserts that because of Perach's (1) attempt to flee again, (2) failure to obey his directives, and (3) "active resistance," it became necessary to deploy his taser[3] equipment. As a result, Lee alleges that Perach, after being struck in his back by the taser darts, fell immediately to the ground. However, Lee maintains that when he and his partner attempted to handcuff him, Perach ignored their commands to stop the resistance and refused to be handcuffed. According to Lee, Perach was warned that he would be tasered a second time if the resistance did not cease. According to Lee, Perach continued his resistance efforts which, in his opinion, warranted the employment of a second taser.

Perach's description of the incident on September 1, 2005 is at variance from Lee's version of the facts in this case. Perach insists that neither Lee nor his partner made any physical contact with him after he tripped over the fence. According to Perach, he was struck by the taser dart and,

---

[3] A taser has been defined as "an electroshock weapon" with "two metallic prongs attached to two 22-foot cables, which the officer shoots at the suspect to immobilize him." *Roberts v. Manigold,* 240 Fed. Appx. 675, 676 n.2 (6th Cir. 2007). "By pressing a lever, a high voltage electrical current is transmitted through a wire to the target." *Nicholson v. Kent Co. Sheriff's Dept.*, 839 F. Supp. 508, 515 n.4 (W.D. Mich. 1993). Tasers are used to temporarily disable a "combative suspect." *Koon v. United States*, 518 U.S. 81, 86 (1996).

thereafter "fell to the ground, face first and very hard." It is his view that, after being struck by the taser dart, he was fully aware of the officers' efforts to place handcuffs on him. But, because of the effects of the taser he claims not to have had "full control over the movements in [his] hands." Perach asserts that he told the officers "I can't" in response to their orders to place his hands behind him. In fact, Perach denies being "aware that he had received a second taser application" because of the continuous and extreme pain throughout his body. Perach was initially transported to the police station, and, thereafter, to the University of Michigan Hospital where he was evaluated for his claimed injuries (i.e., "fractures to both wrists and an avulsion fracture of the hip"). However, Lee states that "[i]t is unclear whether [Perach] suffered these injuries when he tripped over the fence . . . or whether they occurred when he was tasered the first time."

Thereafter, Perach was charged with (1) being in possession of open intoxicants in public and (2) resisting arrest. The first of these charges was dismissed following his payment of $150 in court costs and exercise of a "first offender" option. In his approach to the second charge, Perach pled no contest to the resisting arrest charge, for which he was (1) placed on probation for a period of one year, (2) directed to pay fines and costs, and (3) ordered to perform community service. After Perach completed his probationary period without incident, his conviction was set aside pursuant to the court's deferred sentence policy.

Following the incident of September 1, 2005, Lee was given counseling and training from a superior officer regarding his use of the taser on Perach. The memorandum, written by Sergeant Baird,[4] stated that "the Taser is not *generally* intended to be used as a tool to apprehend someone that is attempting to escape by running away" and that "[w]hen deciding to use the device in this

---

[4] Sergeant Baird's first name does not appear on the memorandum.

manner the main consideration upon the officer is the severity of the crime they are wanted for" (emphasis in original). In addressing Perach's arrest, Baird also wrote that "[i]n this case the suspect was wanted for a code violation only. Using the device in this manner is inappropriate." Lieutenant Mark St. Amour sent a memorandum to Chief of Police Dan Oates, stating that "Officer Lee and the rest of the Department need to be reminded of the level of resistance that is required for a Taser deployment, especially involving minor offens[es] such as MIPs."[5]

## II.

The entry of a summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Faced with a motion for summary judgment, a court should review all of the evidence before it and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). The trial court is not to weigh the evidence or determine credibility, though it may inquire as to the plausibility of inferences from circumstantial evidence. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 2004).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If the moving party has met its burden of showing that there is no genuine issue of a material fact, the nonmoving party cannot merely rest upon the allegations in the pleadings. *See* Fed. R. Civ. P. 56(e). Thus, the

---

[5] Although Lee's superiors refer to the charge of a minor being in possession of alcohol (also known as a "MIP"), Perach was of a legal drinking age at the time of the incident.

nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

III.

Lee submits that Perach's claim under Section 1983 is barred because of his no contest plea to the charge of resisting arrest. Perach, while acknowledging that he did resist arrest by fleeing from the officers, disagrees with Lee. It is Perach's position that an individual never forfeits his constitutional right to be free from the excessive use of force during the course of an arrest.

In 1994, the Supreme Court in *Heck v. Humphries* held that where a plaintiff, who has been convicted of a criminal charge and thereafter seeks redress in a Section 1983 action,

> the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. 477, 487 (1994) (emphasis in original).

In order to determine if a Section 1983 action is barred by a prior criminal conviction, the Court must look to the "relationship between the *elements* of the state conviction and the *elements* of the § 1983 claim." *Bobo v. City of Pontiac*, 2008 WL 1882705 at *4 (E.D. Mich. April 24, 2008) (quoting *Swiecicki v. Delgado,* 463 F.3d 489, 504 (6th Cir. 2006) (Sutton, J.,

concurring)(emphasis in original)).

Perach was arrested and charged under Chapter 108, Section 9:62(16) of the Ann Arbor City Code which provides that the following act is prohibited:

> Knowingly obstruct or resist any member of the police force or fire department in the discharge of the officer's lawful duties or fail to obey the lawful order of said officer, knowing the officer to be a member of the police force or fire department.

The lawfulness of Perach's arrest on the basis of the charge under this ordinance does not preclude a finding by this Court that Lee used excessive force in bringing Perach under control. *See Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir.1997) ("it is possible for a finding that [the defendant] was resisting arrest to coexist with a finding that the police used excessive force to subdue him"), *abrogated on other grounds by Muhammad v. Close*, 540 U.S. 749, 124 S. Ct. 1303, 158 L. Ed. 2d 32 (2000). Perach concedes that, in running away from the officers, he had disobeyed their orders. But Perach insists that he did not resist arrest after having been tasered. The elements of the offense to which Perach pled no contest do not implicate the degree of force that was used by Lee in subduing Perach, especially where the facts surrounding the altercation are in dispute. As such, *Heck* does not preclude Perach's Section 1983 claim of excessive force.

IV.

Lee next submits that he is entitled to qualified immunity which, in turn, precludes the enforcement of Perach's Section 1983 claims. He maintains that his actions during the event in question were objectively reasonable under the circumstances, and thus, do not constitute a constitutional violation. Moreover, he believes that his conduct did not contravene a clearly established constitutional right.

Perach asserts that the granting of a summary judgment in this case would be inappropriate

because he has presented enough factual evidence to create a genuine issue of a material fact as to whether Lee's actions were unconstitutional.  Perach also maintains that Lee's deployment of the taser on him was a violation of a clearly established right to be free from excessive use of force, pointing to the existence of a genuine issue of a material fact as to whether he cooperated with Lee after being apprehended.

Inasmuch as Perach has brought a claim under 42 U.S.C. § 1983, he must "establish that a person acting under the color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Sample v. Bailey*, 409 F.3d 689, 696 (6th Cir. 2005) (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)).  However, the Supreme Court held in 1982 that "'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is a question of law to be resolved by the court, *Pray v. City of Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995), and in which the plaintiff bears the burden of showing that the defendant is not entitled to the immunity.  *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

In 2003, the Sixth Circuit Court of Appeals ("Sixth Circuit") held that in determining whether a government official is entitled to qualified immunity, courts are to follow a three-step inquiry as follows:

> First, [the court must] determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred. Second, [the court] consider[s] whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, [the court] determine[s] whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable

8

in light of the clearly established constitutional rights.

*Sample,* 409 F.3d at 696 (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).  However, in *Pearson v. Callahan*, the Supreme Court recently opined that while the sequence of this inquiry "is often appropriate, it should no longer be considered as mandatory." 555 U.S. ___ (2009).  In interpreting this recent decision of the Supreme Court, the Sixth Circuit has noted that, although courts are "still required to address the same questions in conducting [the] qualified immunity analysis, [they are now] free to consider those questions in whatever order is appropriate in light of the issues before [them]."  *Moldowan v. City of Warren*, 573 F.3d 309, 333 (6th Cir. 2009).

In this case, the Court believes that, based on the circumstances of the instant case, it is appropriate to conduct the qualified immunity analysis in the order as outlined in *Sample*.  Moreover, excessive force claims are to be analyzed in segments so as to determine whether the officer's conduct was objectively reasonable at every stage.  *See Dickerson v. McClellan*, 101 F.3d 1151, 1161-62 (6th Cir. 1996).

### A.

Initially, the Court must seek to determine if Lee's conduct - when evaluated on the basis of Perach's recitation of the facts - amounts to a constitutional violation.  *See Sample*, 409 F.3d at 696.  Perach argues that (1) his criminal offense was a minor one, (2) he was not a danger to anyone around him, and (3) despite having fled from the police, "he did not actively resist arrest after the officers administered the first [t]aser application."  Lee challenges this argument and conclusion, contending that (1) Perach actively resisted arrest on several occasions that evening and (2) his "continued resistance by running from the police elevated the risk of injury to both [himself] and the officers."

The Supreme Court has determined that all claims of excessive force by police officers in the course of an arrest should be analyzed under the "reasonableness standard" of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Sixth Circuit has set forth several factors that a district court should consider when seeking to determine if an officer's actions were objectively reasonable; namely "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the police officers or others, and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Floyd v. City of Detroit*, 518 F.3d 398, 407 (6th Cir. 2008) (citing *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006)). However, the Supreme Court has determined that when courts undertake a review of an officer's conduct, they must do so "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . because police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving– about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

With respect to Lee's fist taser deployment, he asserts that *DeVoe v. Rebant,* 2006 U.S. Dist. LEXIS 5326 at *23-24 (E.D. Mich. Feb. 13, 2006), where the court found that the officer's actions were constitutional, is analogous to the instant action. In *DeVoe*, the plaintiff had been "hostile and uncooperative" and even after being handcuffed, continued to argue with the officers after they had ordered him to enter the patrol car. 2006 U.S. Dist. LEXIS 5326 at *21-22. Significantly, the court opined that if the officers had attempted to physically force the plaintiff into the car, the situation "likely would have escalated the situation into a physical struggle in which [the plaintiff] or the officers could have been seriously injured." *Id.* at *22.

In the case now before the Court and when viewing the facts in a light that is most

favorable to Perach, his resistence consisted of running away, as opposed to physically struggling with the officers or exhibiting overt acts of hostility. Despite Lee's allegations that Perach was a danger to himself and the officers, there is nothing in the record which supports this contention. Nor is there any evidence to suggest that without the deployment of the taser, Perach and/or the officers would have engaged in a physical altercation which would have resulted in serious injury to any of the principals in this lawsuit. Therefore, based on the existing circumstances at the time of Lee's first taser application, his use of force was an unconstitutional excessive use of force.

As to Lee's second taser application, there is a genuine issue of a material fact as to whether Perach resisted the officers' attempts to subdue him after their first administration of the taser. Accepting the truthfulness of the facts as presented by Perach, he fell to the ground after being struck by the first taser and made no further efforts to flee or resist. According to Perach, he attempted to comply with the officers' commands regarding the placement of hands behind his back but, without any control over his arms, said, "I can't." Thus, after looking to the above-listed *Floyd* factors, Perach's suspected charges (i.e., possessing an open intoxicant in public, resisting arrest by fleeing) did not warrant the second deployment of a taser. In reaching this conclusion, the Court determines that Perach (1) was no longer attempting to flee and (2) did not represent a danger to himself or others, especially in his physically debilitated state. Therefore, when applying the standards that are applicable to this dispositive motion, Lee's application of the second taser on a subdued suspect who was making an attempt to comply with his directives constitutes an unconstitutional excessive use of force.

B.

The second step of the qualified immunity analysis is to determine whether the constitutional right at issue was clearly established at the time of the violation. *Sample*, 409 F.3d at 698. Specifically, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In determining whether such a constitutional right is clearly established, courts must look to its own decisions, as well as those of the Supreme Court and the Sixth Circuit. *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 972 (6th Cir. 2004).

Nevertheless, government officials are on "notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The Supreme Court in *Hope* noted that there is no requirement that a previous case be "fundamentally similar" or even "materially similar." Rather, the pertinent question is whether the previous case gave the officials a "fair warning" that their conduct was unconstitutional. *Id.*

In the case at bar, Lee acknowledges that he "should have known that the *gratuitous* or *excessive* use of a taser would violate a clearly established constitutional right." (Mot. for Summ. J. ) (citing *Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 1993); *Williams v. Franklin County, Ohio Sheriff's Dep't*, 619 N.E.2d 23 (Ohio Ct. App. 1992)). However, he justifies his position by noting that the taser was deployed for the first time in an attempt to halt a fleeing suspect. It is his contention that the deployment of the second taser became necessary "while struggling with [Perach], who refused to allow himself to be handcuffed." Perach, in proffering a different version, maintains that Lee's challenged conduct creates at least a genuine issue of a material fact as to whether he was continuing to resist arrest.

Perach is correct in noting that Lee should have known that his gratuitous or excessive use

12

of a taser violates a clearly established constitutional right. *See Landis v. Baker*, 297 Fed. Appx. 453, 464 (6th Cir. 2008) (citations omitted). In *Landis,* the court held that the deployment of a taser in rapid succession on a person, who was surrounded by law enforcement officers in a muddy swamp, was an unconstitutional excessive use of force. *Id.* Moreover, even if these officers did not have sufficient notice that the unwarranted use of a taser could be unconstitutional, the Supreme Court in *Hope* has determined that a "fundamentally similar" case is not required to create a clearly established right. *See Landis v. Cardoza*, 515 F. Supp. 2d 809, 815 (E.D. Mich. 2007) (citing *Hope*, 536 U.S. at 741). Thus, inasmuch as the *Landis* court analogized the deployment of a taser to that of a chemical or pepper spray, *see Landis*, 297 Fed. Appx. at 463, it is quite appropriate to draw the same analogy to the instant case. *See also Landis v. Cardoza*, 515 F. Supp. 2d at 814-15 (drawing parallel between tasers and pepper spray).

The Sixth Circuit has held that the use of pepper spray on a suspect who was "not threatening anyone's safety or attempting to evade arrest by flight" may constitute an excessive use of force. *Greene v. Barber*, 310 F.3d 889, 897-98 (6th Cir. 2002); *see also Vaughn v. City of Lebanon*, 18 Fed. Appx. 252, 266 (6th Cir. 2001) (use of chemical spray may be excessive use of force if there is no immediate threat to officer's safety); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) (use of mace on allegedly complaint suspect could constitute excessive force).

Although Perach argues that the Ann Arbor Police Department's internal guidelines prohibit the use of a taser on a suspected misdemeanant, "the violation of established procedure alone is insufficient to overcome a qualified immunity claim." *Russo v. Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)). Significantly, the courts in these cases found that an officer's use of pepper spray or a taser on a suspect who was no longer

13

attempting to resist arrest by fleeing the scene constituted excessive force. Perach, who bears the burden of refuting Lee's claim of immunity, has failed to proffer any authority which would clearly establish that an officer's use of a taser (or, by analogy, pepper spray) under circumstances that are similar to the inst ant case constitutes an unconstitutional act of enforcement. Although the Court has found that the deployment of the first taser was an unconstitutional act of law enforcement, Lee is nonetheless entitled to qualified immunity because Perach has failed to show the existence of a clearly established right which would have given notice to Lee that his conduct under the circumstances was in contravention of the Fourth Amendment.

As to Lee's use of the second taser on Perach, the analogous case law, which addresses the use of pepper spray, has established that where suspects are compliant and do not pose a threat to anyone's safety, the use of pepper spray (and by analogy, a taser) constitutes excessive use of force. *See Greene*, 310 F.3d at 897-98. Although Lee submits that Perach continued to resist arrest and being placed in handcuffs after being struck with the first taser darts, this version of the incident must be viewed in a light that is most favorable to him. Thus, the Court must conclude that Perach's recount of the circumstances (i.e., he attempted to comply and was no longer resisting arrest when struck by the second taser) is a violation of clearly established law.

C.

Lastly, inasmuch as Lee's second taser application against Perach has been determined by the Court to be unconstitutional and a violation of a clearly established right, an examination must now be undertaken to ascertain if Perach has proffered a sufficiency of evidence to establish that challenged misconduct was objectively unreasonable under the circumstances. *See Sample*, 409 F.3d at 696. When evaluating the facts as submitted by Perach, a reasonable jury could justifiably

rely upon his testimonial evidence and conclude that Lee's second taser application was objectively unreasonable in light of an established constitutional right.

V.

Therefore, the Court finds that Perach's plea of no contest to the resisting arrest charge does not prohibit the continuation of his claims under Section 1983 action for excessive force against Lee.

The Court also holds that Lee's first taser deployment (1) was an unconstitutional use of excessive force, but (2) did not violate a clearly established right. Hence, Lee is entitled to qualified immunity on this issue.

As to the issue relating to the application of the second taser, the Court concludes that this act of law enforcement constituted a use of excessive force which was in violation of the clearly established right of Perach who has proffered sufficient evidence to establish that Lee's conduct was objectively unreasonable. Thus, Lee's request for qualified immunity on this issue is denied.

For the reasons that have been stated above, the Court grants in part, and denies in part, Lee's motion for summary judgment.

IT IS SO ORDERED.

Dated:  September 30, 2009           S/Julian Abele Cook, Jr.
      Detroit, Michigan               JULIAN ABELE COOK, JR.
                                        United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective

email addresses or First Class U.S. mail to the non-ECF participants on September 30, 2009.

                                                    s/ Kay Doaks
                                                    Case Manager